BANK OF MONTGOMERY *vs.* PLANNETT'S ADM'R.

[ACTION FOR MONEY HAD AND RECEIVED.]

1. *Proof of account by entries made by deceased clerk.*—Books of account, kept by a deceased clerk, and all other entries or memoranda made in the course of business or duty, by one who would be at the time a competent witness to the fact which he registers, are held competent evidence from the presumed necessity of the case; but the reason of the rule ceases, and the rule itself consequently fails, when it appears that there is other and better evidence of the same facts; as where it is shown to be the custom of a bank to pay out money only on the checks of its depositors.

2. *Statute of non-claim.*—A claim against the estate of a deceased person is barred, unless presented to the personal representative within eighteen months after its accrual, or within eighteen months after the grant of letters testamentary or of administration, (Code, § 1883,) notwithstanding the failure of the personal representative to give notice to creditors, as required by the statute.

3. *Agency vel non, question of fact; charge invading province of jury.*—Where the fact of agency is controverted, and there is any evidence tending to establish it, the sufficiency of that evidence is a question for the

jury, under appropriate instructions from the court; and a charge, asserting that the evidence is not sufficient to prove the agency, is erroneous.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by the administrator of Stephen Plannett, deceased, to recover certain moneys alleged to have been deposited with the defendant by said Plannett in his life-time; and was commenced on the 5th March, 1857. The complaint contained a count on an open account, and another on a stated account. The defendant pleaded, in short by consent, the general issue, payment, and set-off; and to the plea of set-off the plaintiff replied the statute of non-claim. "On the trial," as the bill of exceptions states, "the plaintiff's account against the defendant was established by entries in a deposit-book, (commonly called a 'pass-book,') to the credit of plaintiff's intestate, and in his own name, made by the defendant's teller. To support the pleas of payment and set-off, the defendant produced its book of original entries, containing items of account, both debit and credit, between said intestate and defendant; and, having proved the handwriting of the officer by whom said entries were made, and his death, and that he kept correct accounts, offered to read said entries to the jury; but, it having been proved to be the custom of the defendant to pay out moneys to depositors on checks drawn by them, the court required the production of the checks, and refused to allow said book of original entries to go before the jury, as sufficient evidence, without the checks; to which the defendant excepted."

"The defendant introduced oral evidence before the jury, tending to show that, in 1854 and 1855, plaintiff's intestate was in bad health, and so continued up to the time of his death in June, 1855; that said intestate, from the 1st June, to the 1st December, 1854, was absent from this State; that before he left, during his absence, and after his return, up to within a short period of his death, he was

the proprietor of a billiard-room in the city of Montgomery, which he rented from one Washington Tilley; that during all this time, on account of his bad health, he was unable to give his personal attention to his business, but entrusted it to the management and control of one V. D. Carnot, who exercised complete control over it, making contracts in reference thereto, and discharging liabilities. The defendant further proved the declarations of said intestate, after his return to Montgomery, that said Carnot was his agent; and these declarations were made whilst said Carnot was still attending to said billiard-room business, and in a conversation which had reference to said business. Some of the entries on said 'pass-book' appeared to have been made during the time said intestate was absent from this State, and whilst said Carnot was attending to his billiard-room. The defendant read in evidence, after proving the signature thereto, two notes signed by said intestate, for $150 each, dated the 1st October, 1852, and payable, respectively, on the 1st August, and the 1st November, 1854, to Washington Tilley or order;" (each of which purported to be given "for one quarter's rent of billiard-room," and was endorsed in blank by said Tilley ;) "and, in connection therewith, two checks on said defendant, drawn by said Carnot, and signed, 'Stephen Plannett, by V. D. Carnot,' bearing date respectively on the days of the maturity of said notes, and purporting on their face to be drawn for the purpose of paying said notes. The defendant introduced in evidence, also, a number of other checks, drawn on said defendant, for various sums of money, bearing various dates between the 1st October, 1851, and the 1st June, 1855, all signed like the two above mentioned. The handwriting of said Carnot to each of said checks was proved; but there was no proof that any of them were drawn on account of the billiard-room. No other evidence on the subject of said Carnot's agency, or his authority to draw said checks, than as above recited, was offered by either party. There was no evidence to show that said intestate, after his return to Montgomery in December, 1854, had ever notified de-

fendant that said Carnot was not his agent; nor any evidence to show that he had any knowledge of checks drawn on his funds in bank by said Carnot. Letters of administration on said intestate's estate were granted to plaintiff in July, 1855.; but there was no proof of any notice to creditors, by publication in any newspaper; nor was there any proof that said notes had been presented to said administrator within eighteen months after the grant of his letters; and as to these notes, pleaded as a set-off by the defendant, the plaintiff replied the statute of non-claim. The court charged the jury—1st, that the evidence was not sufficient to show that said Carnot had authority to draw said checks, or any of them, in behalf of the plaintiff's intestate; and, 2d, that each of the notes offered in evidence under the plea of set-off was barred by the statute of non-claim; to which charges the defendant excepted."

The rulings of the court on the evidence, and the charges to the jury, are now assigned as error.

WATTS, JUDGE & JACKSON, for appellant.—1. The entries made by the deceased clerk were competent evidence to prove the account.—*Clemens v. Patton, Donegan & Co.,* 9 Porter, 289; 1 Greenl. Ev. §§ 115–17, 120, 151; *Batre v. Simpson,* 4 Ala. 305; *Everly v. Bradford,* 4 Ala. 373.

2. The first charge invaded the province of the jury. Agency is a question of fact.—*McClung's Executors v. Spotswood,* 19 Ala. 165; *McDonnell v. Branch Bank at Montgomery,* 20 Ala. 313.

3. The filing of a plea of set-off, which is a cross action, is a sufficient presentation of the claim to prevent the bar of the statute of non-claim. Moreover, the administrator had not published notice to creditors, as required by the statute.—Code, § 1734.

MARTIN, BALDWIN & SAYRE, contra.—1. The checks were higher and better evidence than the parol testimony of the clerk, if living, would have been; and consequently,

15

were better evidence than the entries, which are only admissible, when the clerk, if living, would be competent to prove the facts.—*Batre v. Simpson*, 4 Ala. 312.

2. When the facts are ascertained, agency becomes a question of law.—*Wood v. McCain*, 7 Ala. 800; *Dearing v. Lightfoot*, 16 Ala. 28; *Scarborough v. Reynolds*, 12 Ala. 252; *McKenzie v. Stevens*, 19 Ala. 691; Story on Agency, § 87.

3. The notes were barred by the statute of non-claim, which does not require the publication of notice to creditors before it begins to run.—Code, § 1883; *McHenry v. Well's Adm'r*, 28 Ala. 451.

STONE, J.—The doctrine is settled in this State, " that books of accounts, kept by a deceased clerk, and all other entries or memoranda made in the course of business or duty, by any one who would at the time have been a competent witness to the fact which he registers, are admissible evidence."—*Batre v. Simpson*, 4 Ala. 305; *Everly v. Bradford, ib.* 371; *Clemens v. Patton, Donegan & Co.*, 9 Por. 289. This evidence is received on what is considered the *moral necessity* of the case.—Phil. Ev. (Cow. & Hill's Notes, by Van Cott,) 1 pt. 305, *et seq.*; 1 Greenl. Ev. §§ 115, 120.

This doctrine resting on the presumed necessity of the case, it follows that; when the reason ceases, the rule also fails; *cessante ratione, cessat ipsa lex.*—Cow. & H. Notes, 1st pt. 310. Hence, when goods were delivered on written orders, it was ruled by the supreme court of Pennsylvania, (Ch. J. Tilghman delivering the opinion of the court,) that the books were not evidence.—*Smith v. Lane*, 12 S. & R. 80. To the same effect are the cases of *Tenbroke v. Chapman*, 1 Coxe, (N. J.) 288; *Townley v. Wooley, ib.* 377. See Cow. & H. Notes, 1 pt. 310.

In this case, it is shown that the custom of the bank was, to pay out moneys on the checks of its depositors, and not otherwise. This removes the necessity under which the books would be evidence, and, of course, renders the rule inapplicable. The circuit court did not err in excluding the books from the jury.

[2.] The record shows that the notes of Mr. Plannett were not presented to the administrator within eighteen months after they accrued, nor within eighteen months after the grant of letters of administration.—Code, § 1883. It is not essential to the operation of the bar, that the administrator should have given notice under the statute, (Code, §1734,) although his failure to do so is obviously a breach of duty on his part.—See *Cawthorn v. Weisinger*, 6 Ala. 714; *McHenry v. Wells*, 28 Ala. 451. The court did not err, in charging the jury that the notes of Mr. Plannett; offered in defense, were barred as a set-off by non-claim.

[3.] In charging "that the evidence was not sufficient to show that Carnot had authority to draw said checks, or any of them, in behalf of the plaintiff's intestate," the circuit court erred. In the case of *McClung v. Spotswood*, (19 Ala. 165,) this court, Ch. J. Dargan delivering the opinion, said: "But in most cases, if not in all, the question of agency is a matter of fact, which it is the province of the jury to determine upon, under the instructions of the court; and if the testimony tends to prove, that the person acting as agent had authority from his principal to do the act, then it is manifest that the court cannot exclude from the jury the act itself, without over-stepping the law of its duty, and assuming to determine a matter which belongs to the jury, to-wit, the authority of the agent to do the act." In the case from which we have quoted, the fact of agency was left by the testimony in extreme doubt; yet this court ruled, that the circuit court erred in excluding the evidence from the jury. In the case of *McDonnell v. Br. Bank at Montgomery*, (20 Ala. 313,) a similar decision was pronounced on testimony of agency which was inconclusive.—*Roland v. Logan*, 18 Ala. 307; *Krebs v. O'Grady*, 23 Ala. 726; *King v. Pope*, 28 Ala. 601; *Fisher v. Campbell*, 9 Por. 210; *Strawbridge v. Spann*, 8 Ala. 821; *Barry v. Foyles*, 1 Pet. S. C. 311.

In the case of *Irwin v. Buckaloe*, (12 Serg. & R. 35,) the question was, whether one Moore was the agent of the

defendant. The only evidence of agency was that of one witness, who testified, that "he had done business with Moore, as the agent of defendant, one or two years after the date of the receipt; and that the defendant, about the same time, had told him that Moore was his agent, and did business for him." Gibson, J., in delivering the opinion of the court, said, "The admission was a circumstance to be left to the jury, with a direction to regard the receipt as competent evidence or otherwise, as they should be satisfied, or not, of the existence of the agency when the receipt was signed."

These authorities are full to the point, that the evidence in this case ought to have gone to the jury, under an appropriate charge, for that body to have passed on the question of Carnot's agency. As to the two checks drawn for the payment of the two notes of Mr. Plannett, and which, as the record informs us, "*purported on their face to be drawn for the payment of said notes*," we do not perceive on what principle they were excluded from the jury. These notes were given for the rent of the billiard-tables, and Mr. Plannett was absent from the State when they matured. The proof is quite full, that Mr. Carnot was the agent of Mr. Plannett in the control of the billiard-room. These were facts clearly for the consideration of the jury, on the question of payment of the notes by those two checks. So, forming our opinion on the evidence recited in the record, we think the whole of the checks and orders should have been left before the jury, in connection with the other evidence on the question of agency, for decision by that body. If, under proper instructions, they found that Mr. Carnot was the agent of Mr. Plannett to control his funds in bank, and that on his checks, as such agent, the deposit had been drawn from the bank, this would amount to a good defense to this action under the plea of payment. We need scarcely add, that the doctrine of non-claim has no application to payments.

Reversed and remanded.